UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| TRIGEANT, LTD.,[1] | ) Case No. 13-38580 (EPK) |
| Debtor. | ) |

**PDVSA PETRÓLEO, S.A.'S RESPONSE TO BTB
REFINING LLC'S MOTION TO DISMISS CASE**

PDVSA Petróleo, S.A. ("PDVSA"), by and through its undersigned counsel, submits this response (the "Response") to *BTB Refining LLC's Motion to Dismiss Case* [ECF No. 135] (the "Motion"), and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. There appears to be no dispute that this bankruptcy case should be dismissed due to a current lack of financing caused by the uncertainty engendered by the appeal to the Court of Appeals for the Fifth Circuit (the "Fifth Circuit Appeal") of the judgment of the United States District Court of the Southern District of Texas (the "District Court"), finding that Trigeant, Ltd. (the "Debtor"), while under the control of Harry Sargeant, III ("Sargeant"), had engaged in an actual fraudulent transfer of the Debtor's refinery located in Corpus Christi, Texas (the "Refinery") to BTB Refining, LLC ("BTB"), an entity wholly-owned by Sargeant. The only dispute is whether this Court should grant BTB's request that the dismissal be with prejudice for a period of one year. That request is not in the best interests of the Debtor's creditors and should be denied.

---

[1]   The last four digits of the Debtor's taxpayer identification number are 2037, and the Debtor's mailing address is 3020 North Military Trail, Suite 100, Boca Raton, Florida 33431.

18016232

2. It is evident that BTB requests a one-year prejudice period to ensure that, if the Court of Appeals for the Fifth Circuit affirms the District Court's Judgment (as defined below), BTB can initiate a second foreclosure sale with, again, minimal notice, no marketing, and no attempt to maximize value for the benefit of all stakeholders. As the District Court found, before the first fraudulent foreclosure sale, BTB wanted to obtain ownership of the Refinery at the lowest possible price free and clear of Trigeant's creditors. *See* Findings of Fact and Conclusions of Law, *PDVSA Petróleo, S.A. v. Trigeant, Ltd. et al.*, Case No. 09-00038 (S.D. Tex. Aug. 7, 2012) [ECF No. 239], at ¶ 70 (the "Decision") (attached as Exhibit A to the *Debtor's Emergency Mot. for an Order to Show Cause Why BTB Refining, LLC Should Not be Sanctioned for Willfully Violating the Automatic Stay* [ECF No. 17]). It is clear that Sargeant and BTB maintain the same desire today. Indeed, since the Petition Date (as defined herein), BTB has continued its campaign to seize control of the Refinery and to prevent the Debtor from operating the Refinery (even though BTB's efforts to shutter the Refinery are reducing the value of BTB's own collateral).

3. If the Court of Appeals for the Fifth Circuit affirms the District Court, the interests of the Debtor's creditors would be far better served by an attempt to maximize the proceeds from the Refinery through a sale pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") – and through the continued prosecution of claims that the Debtor has brought against Sargeant for fraud, waste and breaches of fiduciary duties – than through another Sargeant-initiated foreclosure sale. Indeed, as explained below, given the potential value of the Refinery and the Debtor's litigation claims, a subsequent bankruptcy case could very well result in recoveries to unsecured creditors of Trigeant. It is in the best interests of the Debtor's creditors that that option remains available.

4.　　BTB's request for the prejudice period should be denied. It comes from a creditor which has already been found to have engaged in an actual fraudulent transfer of the Debtor's primary asset. At the least, any dismissal with prejudice should not preclude PDVSA and other innocent creditors from filing an involuntary bankruptcy case against the Debtor at any time.

## BACKGROUND

5.　　On August 7, 2012, following a six-day bench trial, Judge Nelva Gonzalez Ramos of the District Court found that the Debtor had fraudulently transferred its principal asset, the Refinery, to BTB in a collusive foreclosure sale with an actual intent to defraud the Debtor's creditors, including PDVSA. (*See* Decision ¶¶ 41-45.)

6.　　In so holding, the District Court found, *inter alia*: (i) that Sargeant had controlled the Debtor and sat on both sides of the foreclosure transaction (*id.* at ¶¶ 4, 6); (ii) that Sargeant had concealed the fraudulent transfer, including by falsely testifying before the International Court of Arbitration that he did not have any interest in, control over, or connection to BTB (*id.* at ¶¶ 76-79); and (iii) that the Debtor had made no effort to maximize the sale price because it was in BTB's interest to purchase the Refinery at the lowest possible price. (*Id.* at ¶¶ 69-70.)

7.　　In an effort to return the parties to their positions before the fraudulent transfer, the District Court re-vested ownership of the Refinery in the Debtor, and reinstated the first lien of BTB in the amount of approximately $22 million. *See* Final Judgment, *PDVSA Petróleo, S.A. v. Trigeant, Ltd. et al.*, Case No. 09-00038 (S.D. Tex. Jan. 14, 2013) [ECF No. 291] (the "District Court Judgment") (attached as Exhibit A to *BTB Refining, LLC's Mot. For Relief from the Automatic Stay Related to Pending Appeal in the United States Court of Appeals* [ECF No. 12]). By reinstating BTB's $22 million claim, the District Court Judgment reinstated the effectiveness of a certain Equity Contribution Agreement, dated December 15, 2006 (the "Equity

Contribution Agreement"), attached as **Exhibit A** to the Declaration of Theresa A. Foudy, filed contemporaneously herewith (the "Foudy Declaration"). The Equity Contribution Agreement provides that the equity holders of the Debtor, including Sargeant, must make cash capital contributions to the Debtor in an amount equal to 50% of PDVSA's claim against Trigeant. (*See* Foudy Decl. Ex. A, at §§ 1, 2.01.)

8. Both BTB and PDVSA appealed the District Court Judgment. In its appeal, BTB seeks to overturn the finding that there was an actually fraudulent transfer. PDVSA cross-appealed, asking for BTB's first lien to be eliminated so that PDVSA can levy directly against the Refinery. Alternatively, PDVSA has asked that BTB's claim be equitably subordinated.

9. On July 3, 2013, BTB commenced an action in the Circuit Court for Montgomery County, Maryland styled as *BTB Refining, LLC v. Trigeant Holdings, Ltd., et al.*, Civil Action No. 378773-V (Cir. Ct. Md. Mar. 17, 2014) (the "Maryland Action") seeking a declaratory judgment that it may exercise its rights as successor in interest under a Pledge Agreement, dated December 15, 2006 (the "Pledge Agreement"). *See* BTB Refining, LLC's Original Compl., *BTB Refining, LLC v. Trigeant Holdings, Ltd., et al.*, Civil Action No. 378773-V (Cir. Ct. Md. Jul. 3, 2014), attached to the Foudy Declaration as **Exhibit B**. Under the Pledge Agreement, Trigeant's owners pledged 100% of the equity ownership interests in Trigeant (the "Equity Interests") as additional collateral to secure Trigeant's indebtedness currently owed to BTB. Through the Maryland Action, BTB seeks to take control of the Debtor by obtaining a declaration that it is the only party that has the right to vote the Equity Interests in the Debtor. (*See id.* at ¶ 38.)

10. On October 4, 2013, the Debtor filed suit in Florida state court against Sargeant, his business partner Mustafa Abu-Naba'a, and a related company, asserting claims of fraud, tortious interference with contracts, and breach of fiduciary duty. *See* Compl., *Sargeant Trading,*

*Ltd. et al. v. Harry Sargeant III, et al.*, Case No. 2013CA015262XXXXAA (Fla. 15th Dist. Cir. Ct. Oct. 10, 2013) (Palm Beach County) (the "Debtor's Complaint"), attached to the Foudy Declaration as **Exhibit C**.  Among other allegations, the Debtor asserted that Sargeant had fraudulently transferred the Refinery and otherwise mismanaged the Debtor, resulting in damages to the Debtor in the approximate amount of $200 million, including $141 million in usurped corporate opportunities related to certain jet fuel contracts.  (*See id.* at ¶¶ 81-119.)

11. On November 27, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  At the time of the filing, the Debtor estimated that the value of the Refinery was approximately $30 million.  *See Am. Schedules of Assets and Liabilities and Statement of Financial Affairs,* Schedule D [ECF No. 113].  More recently, the Debtor has asserted that the value of the Refinery is $70 million.  *See* Defs.' Resp. to Pl.'s Mot. for Summ. Judgment, *BTB Refining, LLC v. Trigeant Holdings, Ltd., et al.*, Civil Action No. 378773-V (Cir. Ct. Md. Mar. 17, 2014), at 39 ("on January 30, 2014, Trigeant, Ltd. obtained an appraisal of the Refinery from Stancil & Co. which valued the Refinery at $70 million"), attached to the Foudy Declaration as **Exhibit D**.

12. On December 2, 2013, BTB filed a *Motion for Relief from the Automatic Stay* [ECF No. 12] (the "Motion to Lift Stay"), seeking to allow the Fifth Circuit Appeal to proceed to "establish whether the [Refinery] is property of the Debtor's estate."  (Mot. to Lift Stay ¶ 25.) PDVSA joined the Motion to Lift Stay.  The Court granted the Motion to Lift Stay by an Order dated January 31, 2014.  The Court of Appeals for the Fifth Circuit heard oral argument on this appeal on March 11, 2014.

13. On January 22, 2014, BTB filed the instant Motion, requesting that the case be dismissed with a one-year prejudice period to re-filing.  On February 5, 2014, the Debtor filed

the *Debtor's Response to BTB Refining LLC's Motion to Dismiss Case* [ECF No. 135], in which the Debtor consented to the dismissal but opposed a prejudice period.

## ARGUMENT

### A Dismissal of the Debtor's Case Should Be Without Prejudice

14. Section 349 of the Bankruptcy Code provides that dismissal of a chapter 11 case will not prejudice the debtor with regard to a subsequent filing, unless (i) the court, for cause, orders otherwise, or (ii) the terms of section 109(g) of the Bankruptcy Code apply to the debtor's case (which is applicable only to cases filed by individuals or family farmers).  *See* 11 U.S.C. § 349; *see also Jolly v. Great Western Bank (In re Jolly)*, 143 B.R. 383, 386-88 (E.D. Va. 1992).

15. Here, BTB asks the Court to dismiss with prejudice to a subsequent filing for at least twelve months so as to "allow BTB and PDVSA–likely the only two creditors who have even an arguable prospect of recovery under any circumstances–to continue to pursue their remedies in the Texas court and elsewhere."  (Mot. ¶ 5.)  However, as explained below, BTB has not proven that there is insufficient value here to reach beyond BTB and PDVSA, nor has BTB shown the type of bad faith conduct by the Debtor needed to justify a prejudice period.  BTB's request should be denied.

**I.    BTB Requests a One-Year Prejudice Period so that It Can
Try To Take Ownership of the Refinery at the Lowest Possible Price**

16. BTB's only stated justification for an extended prejudice period is that a twelve-month period is purportedly needed to sign an unidentified customer to a storage contract at the Refinery.  (*See* Kirkeide Dep. 29:5-12, Mar. 17, 2014.)[2]  According to BTB, the one-year prejudice period would benefit other creditors because if BTB succeeds in operating the

---

[2] Excerpts of the transcript from the deposition of Mr. Kevin Kirkeide, who was designated as BTB's corporate representative in connection with the *Re-Notice of Rule 7030(b)(6) Examination Duces Tecum* [ECF No. 224], are attached to the Foudy Declaration as **Exhibit E**.

-6-

Refinery, such operation *might* result in a third-party coming in to outbid BTB's credit bid at a subsequent foreclosure sale. (*See id.* at 32:22-33:11.) But BTB does not own the Refinery now, and thus has no legal right to sign any storage contract and operate the Refinery for a year. Moreover, BTB does not have any such customer but only speculates that it may obtain such a customer. (*See id.* at 29:13-30:9.) Thus, BTB's assertion that it could successfully operate the Refinery as a storage facility if only it had a one-year prejudice period is speculative at best.

17.  BTB's desire for a one-year prejudice period is motivated by its continuing desire to take ownership of the Refinery at the lower possible price. In fact, BTB has conceded that it has never marketed the Refinery and has no intention to ever market the Refinery. (*See id.* at 98:9-14.) If the Court of Appeals for the Fifth Circuit affirms the District Court Judgment and BTB retains a first-priority lien in the Refinery, BTB will initiate a second foreclosure on the Refinery and obtain ownership again by credit bid. If the Debtor is barred from filing a subsequent petition for twelve months, as BTB requests, the Debtor would be unable to, instead, sell the Refinery pursuant to a marketed and value-maximizing sale pursuant to section 363 of the Bankruptcy Code. The Court should deny what is a transparent effort by BTB to gain ownership of the Refinery at the lowest possible price to the detriment of all other creditors.

## II. BTB Has Not Proved that There Is No Possible Recovery for Creditors Beyond BTB and PDVSA

18.  BTB claims that the Debtor's assets cannot possibly reach beyond satisfying BTB's approximately $22 million debt and the approximately $53 million debt owed to PDVSA. (Mot. ¶ 11.) However, in doing so, BTB understates both the Debtor's assets and the extent that those assets will need to be used to satisfy BTB's and PDVSA's debts.

19.     *First*, on the asset side, the value of the Refinery is unknown.  The Debtor estimates that the value of the Refinery is $70 million,[3] while the District Court found the Refinery to have an orderly liquidation value of $30-40 million, and a value of "potentially" $160 million as a going concern.  (*See* Decision ¶¶ 96, 98.)  BTB has put forth no proof that the Refinery is worth less than the Debtor's secured debt.  On the contrary, BTB's position, as put forth by BTB's corporate representative, is that the value of the Refinery is unknown.  (*See* Foudy Decl. Ex. E, at 96:24-97:6 ("I can't tell you what the value [of the Refinery] would be upon some type of disposal of the property . . . .  I just don't know what the value would be.").)

20.     *Second*, BTB completely ignores that the Debtor's litigation claims are assets and a potential source of recovery for unsecured creditors.  The Debtor has a current lawsuit pending against Sargeant, his business partner, and a related company that seeks damages in the approximate amount of $200 million for, *inter alia*, usurped corporate opportunities arising out of contracts to supply jet fuel.  (*See* Foudy Decl. Ex. C, at ¶¶ 81-119.)

21.     *Third*, BTB's estimate of the Debtor's secured debt ignores that, considering the allegations of the Debtor's Complaint, it would not be surprising if the Debtor were to seek to equitably subordinate BTB's debt pursuant to section 510(c) of the Bankruptcy Code.  With respect to PDVSA's debt, the Debtor has a contractual right under the Equity Contribution Agreement to require the Debtor's equity holders to make capital contributions to the Debtor in an amount equal to 50% of PDVSA's claim.  (*See* Foudy Decl. Ex. A, at §§ 1, 2.01.)  Through these two means alone, the amount of secured debt owed to BTB and PDVSA could be reduced to approximately $26 million – below the proposed stalking horse bid of Frontera Refining, LLC

---

[3]     *See* Foudy Decl. Ex. D, at 39 ("on January 30, 2014, Trigeant, Ltd. obtained an appraisal of the Refinery from Stancil & Co. which valued the Refinery at $70 million").

("Frontera") and well below the Debtor's most recent estimate of the Refinery's value – without even counting any potential litigation recovery on the Debtor's Complaint.

22. In light of the potential value in the Refinery and the Debtor's substantial litigation claims, a future bankruptcy filing should be an available option following the resolution of the Fifth Circuit Appeal or other changes in circumstance.

### III.   There Is No Cause for a Twelve-Month Prejudice Period

23. The appropriate prejudice period, if any, to be imposed following dismissal of a chapter 11 case, is a matter of discretion of the Court pursuant to sections 105(a) and 349(a) of the Bankruptcy Code. Generally, courts impose a prejudice period only in cases involving bad faith. *See Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327, 341 (2d Cir. 1999) (affirming dismissal of individual debtor's chapter 13 case with prejudice to future filing based on bad faith, including filing three prior chapter 11 cases "whose sole and transparent purpose was to frustrate [mortgage lender's] foreclosure proceeding" against real property); *In re Acme Cake Co.,* 495 B.R. 212, 223 (Bankr. E.D.N.Y. 2010) (request for dismissal with prejudice denied where no evidence of bad faith shown, despite creditor's argument that debtor might file another bankruptcy case and frustrate enforcement of judgment); *In re Hall*, 285 B.R. 908, 912-13 (Bankr. N.D. Ind. 2001) ("In fact, the court has not even been persuaded that Debtor's case was associated with sufficient bad faith to justify dismissal, much less a dismissal with the extreme consequence [the creditor] ask the court to impose."); *In re Conley*, 105 B.R. 116, 117-18 (S.D. Fla. 1989) (reversing bankruptcy court's dismissal with prejudice of debtor's case due to lack of "cause" as there was no evidence of the debtor's bad faith); *In re McDermott*, 77 B.R. 384, 387 (Bankr. N.D.N.Y. 1987) (denying creditor's request for extended prejudice period noting that "[a]bsent a showing of bad faith as grounds for dismissal of the Chapter 11 case, the Court will not now prospectively bar a bankruptcy filing by either of the Debtors."); *cf. In re*

*Phoenix Land Corp.*, 164 B.R. 174, 176 (Bankr. S.D. Fla. 1993) (granting one-year prejudice period because "the Court [was] convinced that the Debtor filed these Voluntary Chapter 11 Proceedings in bad faith").

24. Here, there are no facts showing that the Debtor has acted with bad faith (i) in filing its voluntary petition commencing the bankruptcy case, or (ii) through the Debtor's actions during the bankruptcy case. Indeed, BTB is unable to allege the requisite bad faith necessary to support its request for a one-year prejudice period. *See In re Bicoastal Corp.*, 109 B.R. 467, 470-72 (M.D. Fla. 1989) (holding the filing of voluntary Chapter 11 petition in response to third-party's attempt to gain control of the debtor's equity interests and management does not amount to bad faith were a debtor "demonstrate[s] to [the] court's satisfaction… an honest intention" and "a real need and a real ability to effectuate the aim of Chapter 11."). Following the Petition Date, the Debtor obtained debtor-in-possession financing from Harry Sargeant, Jr., and began to generate operating revenue. *See Interim Order Granting Debtor's Emergency Mot. Pursuant to 11 U.S.C. §§ 105, 364 and Fed. R. Bankr. P. 4001, for an Order Authorizing the Debtor to Incur Unsecured Debt* [ECF No. 37]. The Debtor also located additional potential financing from Frontera, who agreed to act as a stalking horse bidder in a subsequent sale pursuant to section 363 of the Bankruptcy Code. *See Mot. for a Final Order (I) Authorizing the Debtor to Incur Post-Petition Secured Indebtedness, (II) Granting Security Interests and Superpriority Claims Pursuant to Sections 105(a) and 364(c) and (d) of the Bankruptcy Code; and (III) Scheduling a Final Hearing on the Mot. Pursuant to Bankruptcy Rules 2002, 4001 and 9014* [ECF No. 123]. To be sure, the Debtor entered Chapter 11 with a real need and a real ability to pursue a Chapter 11 plan, however, the Debtor's plan depended upon being able to conduct a section 363 sale while the Fifth Circuit Appeal was stayed. That this plan became untenable once the Court lifted

the stay to allow the Fifth Circuit Appeal to proceed does not evidence bad faith.  *See* Hr'g Tr. 11:22-25, Feb. 13, 2014 (this Court stated:  "We have a case that was filed with the intention, I believe, of doing a sale over the objection of BTB.  It is not a completely unfound theory.").

25. There is no allegation that the Debtor filed for bankruptcy protection with any intent other than to achieve a successful section 363 sale.  Faced with an inability to currently succeed once the stay was lifted, the Debtor has now consented to the dismissal of the bankruptcy case.  This is the Debtor's first bankruptcy filing, and it should be allowed to file a case again if the resolution of the Fifth Circuit Appeal or other events make such a filing advisable in the future.

## CONCLUSION

26. For all the foregoing reasons, BTB's request for a one-year prejudice period should be denied. At the very least, and dismissal should be without prejudice to a subsequent involuntary filing by innocent creditors, such as PDVSA.

Dated: March 31, 2014
       Miami, Florida

By: */s/ Jay M. Sakalo*
Jay M. Sakalo, Esq. (Bar No. 156310)
Scott L Baena, Esq. (Bar No. 186445)
BILZIN SUMBERG BAENA
PRICE & AXELROD LLP
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
Tel.:   (305) 374-7593
Fax:   (305) 351-2253
E-mail: jsakalo@bilzin.com
            sbaena@ bilzin.com

- and -

Steven J. Reisman, Esq.
Theresa A. Foudy, Esq.
Jonathan J. Walsh, Esq.
CURTIS, MALLET-PREVOST,
  COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178-0061
Tel.:   (212) 696-6000
Fax:   (212) 697-1559
E-mail:  sreisman@curtis.com
            tfoudy@curtis.com
            jwalsh@curtis.com

*Attorneys for PDVSA Petróleo, S.A.*

18016232

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all parties listed below via ECF or first class U.S. Mail on this 31st day of March, 2014

/s/ *Jay M. Sakalo*
Jay M. Sakalo, Esq.
Florida Bar No. 156310

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- Alan R Crane acrane@furrcohen.com, pmouton@furrcohen.com;atty_furrcohen@bluestylus.com
- C Craig Eller celler@broadandcassel.com
- Heidi A Feinman Heidi.A.Feinman@usdoj.gov
- Jordi Guso jguso@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com
- Lewis Martin Killian lkillian@bergersingerman.com, bwalter@bergersingerman.com;efile@bergersingerman.com
- Isaac M Marcushamer imarcushamer@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com
- Office of the US Trustee USTPRegion21.MM.ECF@usdoj.gov
- David L Rosendorf dlr@kttlaw.com, rcp@kttlaw.com;CWT@kttlaw.com;ycc@kttlaw.com
- Deirdre B. Ruckman druckman@gardere.com, koliver@gardere.com
- Diane W Sanders austin.bankruptcy@lgbs.com
- Paul Steven Singerman singerman@bergersingerman.com, mdiaz@bergersingerman.com;efile@bergersingerman.com
- Charles W Throckmorton cwt@kttlaw.com, lf@kttlaw.com;ycc@kttlaw.com
- Aaron A Wernick awernick@furrcohen.com, cworkinger@furrcohen.com;atty_furrcohen@bluestylus.com

18016232

**Manual Notice List**

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service).

Mark T. Mitchell  
600 Congress Ave., #3000  
Austin, TX 78701

Ronald A Simank  
615 N Upper Broadway #700  
Corpus Christi, TX 78401

**COPIES TO:**

Steven J. Reisman, Esq.  
Theresa A. Foudy, Esq.  
Jonathan J. Walsh, Esq.

18016232